UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:12CV-000120-JHM

ALLEN DODD, JR.; DELORES V. DODD;
LESLIE E. DODD; SARAH L. DODD; ALLEN
L. DODD III; PATRICK M. DODD                                    PLAINTIFFS

VS.

CARLOS LOPEZ; PATRICIA HULL; RICK
MORGAN; LUKE T. LEONARD; UNITED
STATES ARMY CORPS OF ENGINEERS                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Allen Dodd, Jr., Delores V. Dodd, Leslie E. Dodd, Sarah L. Dodd, Allen L. Dodd III, and Patrick Dodd (hereinafter "Plaintiffs"), bring this action against the United States Army Corps of Engineers ("Corps") seeking judicial review of the Corps' decision to issue permits for a twelve-slip floating boat dock on Barren River Lake and to deny Plaintiffs' request to revoke the issuance of the permit. [DN 1]. Plaintiffs contend that the issuance of the permit for the boat dock by the United States Army Corps of Engineers is contrary to the Shoreline Management Plan and therefore is arbitrary and capricious. The Corps requests the Court uphold its decision. Pursuant to the Scheduling Order, the parties have filed their briefs for judgment on the administrative record [DN 18, DN 25, DN 26]. Fully briefed, this matter is ripe for decision.

**I.  BACKGROUND**

Plaintiffs own property near Hurricane Creek on Barren River Lake. Plaintiffs appeal the the Corps' issuance of permits for a twelve-slip floating boat dock owned by residents of Parkview Shores subdivisions. Plaintiffs claim the boat dock violates the terms of the Barren River Lake's Shoreline Management Plan. The Shoreline Management Plan provides guidance and policy for the

Corps' management of the shoreline and adjacent public lands.

In September of 2006, Mr. Aubry Underhill, an individual who lives in the Parkview Shores subdivision, applied for a new boat dock permit. By letter dated April 27, 2007, the Park Manager of Barren River Lake informed Underhill that the Corps tentatively approved his application for a new dock pending construction and placement along the shoreline in compliance with the 2005 Shoreline Management Plan. After the approval of Underhill's dock application, other boat owners in the Parkview Subdivision area submitted applications to add slips to the Underhill dock. The Corps eventually approved the dock with a maximum of twelve slips.

By letter dated August 20, 2011, Plaintiff Alan Dodd, Jr. wrote the Barren River Lake Park Manager Carlos Lopez complaining about the dock in question. Dodd indicated that he visited the Corps office and was informed that docks under the Shoreline Management Plan could only be located 500 feet from an access point. Dodd questioned the Corps' measurement method implemented to determine that the Parkview Shore dock met the 500 foot requirement. Dodd represented that he believed that the dock should be located on the shoreline in front of the Parkview Shores subdivision where the owners of the dock slips lived.

By letter dated September 28, 2011, Lopez responded to Dodd's written complaints. Lopez informed Dodd that "[n]ew dock locations are only approved in shoreline areas zoned as Limited Development and must be at least 500 [feet] from the nearest permitted dock location" and that the measurement "is taken from the center of the existing dock location to the center of the proposed dock location . . . ." (Administrative Record ("AR") at 15.) Lopez acknowledged that the 2010 Shoreline Management Plan described eligible applicants as those having a legal point of access to the government's property that is within 500 feet of the dock; however, he informed Dodd that the

2

versions of the Shoreline Management Plan in existence prior to 2010 did not contain the distance restriction currently found in the 2010 Shoreline Management Plan. As a result, "applicants applying for permits prior to 2010 [were allowed] to join a new unimproved pathway permit to an existing unimproved pathway permit that together could exceed 500 [feet]." (Id.) Additionally, Lopez informed Dodd that private property ends at the government's property line and that dock permits are not always approved directly below lakefront subdivisions. (Id.) Lopez concluded that the approval of the dock permit was appropriate and denied Dodd's request. Dodd wrote additional letters to Lopez during October and met with him in November of 2011. After that meeting, Dodd appealed Lopez's decision to Patricia Hull, Operations Project Manager, and thereafter to Rick Morgan, Chief of the Operations Division for the Corps.

By letter dated February 23, 2012, Morgan affirmed the previous decisions finding that the dock applicant met the eligibility requirements defined by the Shoreline Management Plan. Specifically, Morgan found that "[t]he permit application for the group dock in question was submitted by an adjacent landowner in 2006, and approved in 2007. The applicant met the eligibility requirements defined in the SMP; the proposed dock location is in a Limited Development Area, as required; and it is located within the prescribed distance limitations." (AR 4.) Additionally, Morgan informed Dodd that a new dock location is feasible near your area of shoreline. (Id.) After the adverse decision, Dodd appealed to Colonel Luke Leonard of the Corps. (AR 3.) By letter dated March 20, 2012, Colonel Leonard denied Dodd's appeal. (AR 1-2.)

Plaintiffs object to the boat dock because the dock's placement on the shoreline is in the sight line of their property. Additionally, Plaintiffs claim that the boat dock interferes with their intent to subdivide their property into smaller lots. Plaintiffs seek an order requiring the relocation of the

3

dock to the shoreline closer to the dock owner's property or the removal of the dock completely. As a result of the denial of their administrative appeal, Plaintiffs filed the current action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. The parties have filed briefs on the administrative record. In addition to the merits of the administrative appeal, Defendants argue that Plaintiffs lack standing to bring this appeal.

## II. STANDING

Before considering the substantive merits of the claims raised on appeal, the question of standing must be determined by the Court. Warth v. Seldin, 422 U.S. 490, 498 (1975). Plaintiffs must establish that they meet both the constitutional and prudential standing requirements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing under Article III of the United States Constitution requires proof of three elements-that "(1) [Plaintiffs] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant[s]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000). Plaintiffs must also demonstrate that its interests fall within the "zone of interests" protected by the APA to satisfy prudential standing. Bennett v. Spear, 520 U.S. 154, 162 (1997). See also Ocean Advocates v. U.S. Army Corps of Engineers, 402 F.3d 846, 859 (9th Cir. 2005).

### A. Constitutional Standing

Plaintiffs bring this action as individual private landowners whose property allegedly has been adversely affected by the conduct of Defendants. Specifically, Plaintiffs allege an injury to their financial interest caused by the placement of the boat dock in front of their property on Barren

River Lake and by the failure of the Corps to adhere to the 2010 Shoreline Management Plan in issuing the permit to build the dock. While it is uncontested that the shoreline of Barren River Lake in the subject area is owned by the United States and managed by the Corps (AR at 31), it is also uncontested that Plaintiffs' property borders the shoreline and Barren River Lake at the location of the dock in question. It is also uncontested that placement of the boat dock in front of Plaintiffs' property prevents Plaintiffs from building a boat dock to service their property near the current dock. Plaintiffs clearly have standing to challenge the issuance of the permit for the dock, as well as the placement of the dock. Plaintiffs allege a "personal stake in the outcome of the controversy" and a distinct and palpable injury to themselves likely to be redressed if the requested relief is granted. Warth, 422 U.S. 499.

### B. Prudential Standing

To meet the prudential standing requirements for a suit brought pursuant to the APA, a plaintiff "must establish (1) that there has been a final agency action adversely affecting the plaintiff, and (2) that, as a result, [the plaintiff] suffers legal wrong or that [the] injury falls within the 'zone of interests" of the statutory provision the plaintiff claims was violated. Ocean Advocates, 402 F.3d at 861. The zone of interests test asks "'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" Yount v. Salazar, 2013 WL 93372, *15 (D. Ariz. Jan. 8, 2013)(quoting Association of Data Processing Service Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)); see also Dismas Charities, Inc. v. U.S. Dept. of Justice, 401 F.3d 666, 674 (6th Cir. 2005). The zone-of-interests test is not, however, meant to be especially onerous. National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs, 417 F.3d 1272, 1287 (D.C. Cir. 2005). "While 'there need

5

be no indication of congressional purpose to benefit the would-be plaintiff,' the zone of interests test 'denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" Yount, 2013 WL 93372, *15 (quoting Clarke v. Securities Industry Ass'n, 479 U.S. 388, 399–400 (1987)).

In this case, there is no dispute that the Corps' decision related to the dock permit constitutes agency action within the meaning of the APA. The question is whether Plaintiffs have suffered a legal wrong or injury that falls within the "zone of interests" of the statutory provision the Plaintiffs claim as violated. Title 36 C.F.R. § 327.30, entitled "Shoreline Management on Civil Works Projects," provides in relevant part as follows:

> It is the policy of the Chief of Engineers to protect and manage shorelines of all Civil Works water resource development projects under Corps jurisdiction in a manner which will promote the safe and healthful use of these shorelines by the public while maintaining environmental safeguards to ensure a quality resource for use by the public. The objectives of all management actions will be to achieve a balance between permitted private uses and resource protection for general public use. Public pedestrian access to and exit from these shorelines shall be preserved. For projects or portions of projects where Federal real estate interest is limited to easement title only, management actions will be appropriate within the limits of the estate acquired.

36 C.F.R. § 327.30(d)(1). Consistent with this policy, the stated purpose of the Shoreline Management Plan in the present case is "to provide guidance and policy on management of the shoreline and to provide a balance of permitted uses while preserving and protecting the project's natural resources." (AR 31.) Additionally, § 327.30(d)(2) and (d)(3) provide that a Shoreline Management Plan is to be prepared by the Corps and that "[p]rivate shoreline uses may be authorized in designated areas consistent with approved use allocations specified in Shoreline Management Plans." 36 C.F.R. § 327.30(d)(2),(3).

6

Plaintiffs allege injuries caused by the Corps' interpretation of the Shoreline Management Plan applicable to Barren River Lake and by the Corps' issuance and retention of the permits for the Parkview Shores docks. Specifically, Plaintiffs allege an injury to their financial interest caused by the placement of the boat dock in front of their property on Barren River Lake and the failure of the Corps to adhere to the 2010 Shoreline Management Plan in issuing the permit to build the dock. Additionally, both parties recognize that placement of the Parkview Shore boat dock in front of Plaintiffs' property prevents Plaintiffs from building a boat dock to service their property at or near the current dock. Plaintiffs' interests sought to be protected share a "plausible relationship" to policies underlying 36 C.F.R. § 327.30 and the Shoreline Management Plan, including the management of the shorelines of Barren River Lake and the Corps' issuance of permits for private uses of the shorelines in accordance with the Shoreline Management Plan. See Clarke, 479 U.S. at 403. For these reasons, the Court finds that Plaintiffs have met the prudential standing requirements.

### III. STANDARD OF REVIEW

The Court's review of the Corp's decision is governed by the APA, 5 U.S.C. §§ 701-706. Under the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA limits the scope of judicial review to a review of the administrative record only. 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party"); Florida Power & Light Co. v. Lorion, 470 U.S. 729, 734 (1985); Forest Service Employees for Environmental Ethics v. United States Forest Service, 689 F. Supp.2d 891, 895 (W.D. Ky. 2010). Under the "'arbitrary and capricious standard, the standard is narrow and the court should not substitute its judgement for that of the agency.'" Forest Service

Employees for Environmental Ethics, 689 F. Supp.2d at 895 (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). "The court should be particularly deferential to the agency decisions when it implicates substantial agency expertise or regards scientific matters within its area of expertise." Id. (citing Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 377–78 (1989); Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 103 (1983).

"An agency decision would be considered arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Id. In contrast, "a [c]ourt must find in favor of the agency if the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" Natural Resources Defense Council, Inc. v. U.S. Army Corp of Engineers, 2010 WL 1416681, *2 (N.D. Ohio March 31, 2010)(quoting Baltimore Gas & Elec. Co., 462 U.S. at 105).

## IV. DISCUSSION

Plaintiffs argue that the issuance of the permit for the boat dock by the United States Army Corps of Engineers is contrary to the Shoreline Management Plan and therefore is arbitrary and capricious. According to Plaintiffs, section 20.4.6 of the 2010 Shoreline Management Plan provides that "[i]n order to qualify for a dock permit, the dock location must be located within 500 feet of the applicant's legal point of access to government property" (AR 130). Thus, because the dock is located 793.14 feet inside Dodd's property, Plaintiffs contend that the dock is in clear violation of this provision. Additionally, Plaintiffs maintain that section 11.1 of the Shoreline Management Plan

requires that permits only be issued to adjacent property owners and that the Parkview owners are not the adjacent owners in this case because their closest access point is 793 feet away. Plaintiffs argue that since the dock in issue is not adjacent to the owners who hold the permit, the agency action was arbitrary. Plaintiffs request a judicial declaration that the boat dock is in violation of the Shoreline Management Plan, and, as such, the Court must order the dock be removed from its present location.

First, the 2010 Shoreline Management Plan's 500 foot distance restriction did not exist at the time of the Corps' 2007 decision to approve the dock application. As discussed above, the Underhill dock application was submitted in September of 2006, and approved in April of 2007. (AR 159, 155.) The 2005 Shoreline Management Plan in existence at the time of the approval of the dock application did not include the distance restriction from the dock to the property owned by the applicant or a right of entry for the applicant. Therefore, the approval of the dock permit complied with the applicable Shoreline Management Plan in effect at that time of the permit.

Second, contrary to Plaintiffs' argument, the original applicant for the boat dock in question was an adjacent property owner by virtue of his residence in the Parkview Shores subdivision and legal right of access to the shoreline. (AR 34, 2005 Shoreline Management Plan; AR 102-103, 2010 Shoreline Management Plan.) ("Permits and licenses may be issued only to adjacent property owners or property owners of a developed subdivision adjacent to government property who have legal right of access to the shoreline.")

Third, under the 2010 Shoreline Management Plan, the existing boat dock is considered a "Grandfathered Facility" and is grandfathered in unless the dock owners must make major repairs. (AR 131-132.)

While the Court understands Plaintiffs' frustration regarding the placement of a boat dock on the shoreline in front of their property, the Corps did not violate the Shoreline Management Plan in place at the time of the approval of the application, did not vary from its own regulations, did not fail to consider all aspects of the problem, or did not act in an arbitrary and capricious manner. Instead, a review of the record reflects that the Corps considered the relevant factors in light of the Shoreline Management Plan and "articulated a rational connection between the facts found and the choice made." Baltimore Gas & Elec. Co., 462 U.S. at 105.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Plaintiffs' administrative appeal is **DENIED**. The decision of the United States Army Corps of Engineers is **AFFIRMED**.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 6, 2013